IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Printis Owens, | ) | C/A No. 0:13-386-BHH-PJG |
| *on behalf of A.O., a minor child*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Printis Owens ("Owens"), brought this action on behalf of his minor child pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his minor child's claims for Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

In January 2010, Owens applied for SSI on behalf of his minor son, A.O. Owens's application was denied initially and on reconsideration and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on July 21, 2011 at which A.O., as well as his father and stepmother, appeared and the parents testified. Owens was informed of his right to

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



representation, but chose to appear and testify at the hearing without the assistance of any attorney or representative. The ALJ issued a decision on September 23, 2011 finding that the minor child was not disabled. (Tr. 8-15.)

A.O. was born in 2005 and was four years old on the date the SSI application was filed on his behalf. (Tr. 82.) Owens alleges that A.O. is disabled due to bipolar disorder, behavioral problems, and asthma. (Tr. 103, 40.)

The ALJ made the following findings and conclusions:

1. The claimant was born . . . [in] 2005. Therefore, he was a preschooler on January 11, 2010, the date the application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since January 11, 2010, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

* * *

3. The claimant has the following severe impairments: behavioral problems and asthma (20 CFR 416.924(c)).

* * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

* * *

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

* * *

6. The claimant has not been disabled, as defined in the Social Security Act, since January 11, 2010, the date the application was filed (20 CFR 416.924(a)).

(Tr. 10-15.)

Owens filed a request for Appeals Council review which was denied on December 13, 2012, making the decision of the ALJ the final action of the Commissioner.  (Tr. 1-3.)  This action followed.

## SOCIAL SECURITY DISABILITY FOR MINORS

An individual under the age of eighteen is considered disabled under the Social Security Act if that child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i); see also 20 C.F.R. § 416.906.  To determine whether a child is disabled, the regulations require the ALJ to consider, in sequence:

(1)    whether the child is engaged in substantial gainful activity;

(2)    whether the child has a "severe" impairment; and

(3)    whether the child has an impairment that meets, medically equals, or functionally equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled.

20 C.F.R. § 416.924(b)-(d).

To assess functional equivalence, the Commissioner will consider the child's level of function in six domains, which "are broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1).  These domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being.  Id. A child's impairments or combination of impairments functionally equal the listings when they result either in "marked" limitations in two domains or an "extreme" limitation in one domain.  20 C.F.R.



§ 416.926a(a).  Generally, the Commissioner will find that a child has a "marked" limitation in a domain when the child's impairment or combination of impairments interferes seriously with his ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2)(i). " 'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme,' " and may arise when several activities are limited, or when only one is limited.  20 C.F.R. § 416.926a(e)(2)(i). Generally, the Commissioner will find that the child has an "extreme" limitation in a domain when the claimant's impairment or combination of impairments interferes very seriously with his ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(3)(i). " 'Extreme' limitation also means a limitation that is 'more than marked,' " and may arise when several activities are limited or when one is limited.  Id.  Although "extreme" limitation is the rating given to the worst limitations, it does not necessarily mean a total lack or loss of ability to function.  Id.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig, 76 F.3d



at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

**ISSUES**

Owens raises the following issues for this judicial review:

I.      The ALJ failed to fully and fairly develop the record considering Plaintiff appeared without counsel.

II.     The ALJ failed to consider the entire record and resolve inconsistencies and ambiguities in assessing the six functional equivalence domains described in 20 C.F.R. 416.926(a) applicable to children's disability determinations.

(Pl.'s Br., ECF No. 21.)

**DISCUSSION**

**A.      Development of the Record**

As an initial matter, the court observes that following a discussion with the ALJ about representation during which the ALJ offered to provide Owens additional time to obtain counsel or other representation, Owens elected to represent himself before the ALJ.  An ALJ has a duty to ensure a claimant receives a full and fair hearing of his claims.  Sims v. Harris, 631 F.2d 26, 27 (4th Cir. 1980).  This duty includes exploring relevant facts and inquiring into issues necessary for adequate development of the record.  Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986).  This duty is particularly important where a claimant appears *pro se*.  Marsh v. Harris, 632 F.2d 296, 299 (4th Cir. 1980).  However, the heightened duty of care in *pro se* cases relates to the development of the issues and facts in the record, and does not impact the weight to be given to the evidence in the



record.  See Bell v. Chater, 57 F.3d 1065, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) ("[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.") (citing Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994)).  Whether he is represented or not, the plaintiff bears the burden of proof, and he is responsible for providing evidence to support his application and demonstrate disability.  See 20 C.F.R. § 416.912(a) & (c).

Owens appears to first argue that the ALJ erred in failing to develop the record by failing to inquire as to the availability of records from an upcoming August 2011 appointment with a psychiatrist with the Medical University of South Carolina.  During the hearing on July 21, 2011, A.O.'s stepmother testified that she believed A.O.'s appointment was scheduled for August 24, 2011.  (Tr. 34.)  However, as pointed out by the Commissioner, the record reflects that the ALJ requested authorization to obtain additional records from three facilities that were referenced during the testimony as providing A.O. treatment.  (Tr. 36.)  Further, after the ALJ obtained records from these facilities, the ALJ informed Owens by letter dated September 2, 2011 of the additional evidence that he had received and proposed entering it into the administrative record.  The ALJ advised Owens that in light of this additional evidence Owens may submit additional comments or argument, additional records or reports, or interrogatories, as well as request a supplemental hearing.  (Tr. 137-38.)  The ALJ further advised Owens that if he did not respond within ten days of receipt of the notice, the ALJ would assume he did not wish to avail himself to any of the above options and would enter the additional evidence into the record and issue a decision.  (Tr. 138.)  After receiving no response from Owens, the ALJ entered his decision on September 23, 2011.  The Commissioner argues that Owens has failed to make any proffer as to whether A.O. actually attended the August 2011 psychiatric appointment, let alone whether evidence from this appointment would support

A.O.'s application for benefits.  In response, Owens simply argues that he has psychological evaluations from *November 2011* and *January 2012*.  Accordingly, the court finds that Owens cannot demonstrate that the ALJ failed to develop the record by failing to inquire as to the availability of records from an August 2011 appointment with a psychiatrist with the Medical University of South Carolina as Owens himself appears to be relying on records that post-date this alleged appointment and the ALJ's decision.  Moreover, "[m]ere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand."  Nelms v. Astrue, 553 F.3d 1093, 1098 (7th Cir. 2009) (internal quotation marks and citations omitted).

Owens also argues that the ALJ erred in failing to developing the record by failing to request additional school records.  Owens generally argues that additional school records would support the credibility of Owens and A.O.'s stepmother.[2]  In evaluating the parents' credibility, the ALJ found that

> [their assertions] regarding the claimant's symptoms, functional limitations, and restrictions in activities of daily living are overstated and lacking in corroboration by the medical and other evidence of record.  Complaints regarding the extent of the claimant's intellectual abilities, attention and concentration spans, and ability to get along with others are inconsistent with the medical and school records.

(Tr. 12.)  The Commissioner argues that the record before the ALJ included more than two years of school records and treatment records which were adequate to support his finding that "A.O.'s problems, though significant, would improve with appropriate medication and more consistent

---

[2] Owens initially argues that the school records would undermine the ALJ's determination "that the evidence suggested A.O.'s behavioral problems were due to inconsistencies in home discipline and that they were not a problem at school."  (Pl.'s Br. at 16, ECF No. 14 at 16.)  However, the ALJ's decision does not include such a determination.  Rather, the ALJ found that treatment notes "document concerns that [A.O.'s] behavioral problems were due to inconsistencies in home discipline and a failure to reinforce behavioral expectations and enforce consequences from school behavior at home."  (Tr. 12-13.)



parenting." (Def.'s Br. at 14, ECF No. 18 at 14); see also Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); Bell, 1995 WL 347142, at *4 ("[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record."). Owens's argument that additional school records such as a behavior report or notebook would somehow support the parents' credibility is speculative. See Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000) (requiring for a claimant to show prejudice from an ALJ's failure to develop the record, which requires demonstrating that he "could and would have adduced evidence that might have altered the result") (internal quotation marks and citations omitted). Accordingly, Owens has failed to demonstrate error by the ALJ in this regard.

## B.    Functional Equivalence

As stated above, at Step Three a claimant is disabled if his impairment(s) functionally equals a listing. To assess functional equivalence, the Commissioner will consider the child's level of function in six domains, which "are broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Owens challenges the ALJ's findings with regard to three of these domains: (1) acquiring and using information, (2) interacting and relating with others, and (3) caring for oneself. See 20 C.F.R. § 416.926a(b).

### 1.    Acquiring and Using Information

The ALJ explained that the "acquiring and using information" domain "involves how well children perceive, think about, remember, and use information in all settings, which include daily activities at home, at school, and in the community." (Tr. 13.) The ALJ found that A.O. had no



limitations in this domain. The ALJ found that "[t]he record suggests that the claimant's problems in school are due to attention difficulties rather than difficulty acquiring and using information." (Id.) The ALJ observed that A.O. received a verbal IQ score of 83 and a nonverbal IQ score of 79 on the WPPSI in February 2010, and that A.O.'s IEP assessment indicated that A.O. did not require special education services at that time. Finally, the ALJ found that A.O.'s treatment notes demonstrate that when A.O.'s medications are working, he is able to pay attention at school and that his teachers have not submitted information suggesting additional limitations in this domain. (Id.)

Owens argues that the ALJ failed to properly explain his determination that A.O. had no limitation in this domain. Specifically, Owens argues that treatment notes demonstrate that A.O.'s medications did not work consistently or for any extended period of time. The ALJ's actual finding regarding A.O.'s medications specifically includes the caveat "*when* the claimant's medications are working, he is able to pay attention at school." (Tr. 13) (emphasis added). However, Owens appears to argue that to the extent this finding suggests that the medications worked well enough to support a determination that A.O. had no limitations in acquiring and using information, it is not supported by the evidence. Owens argues that the medical evidence fails to show any significant amount of time where A.O.'s medications were effective.

Upon review of the record and the ALJ's decision, Owens has failed to demonstrate that the ALJ's findings were unsupported by substantial evidence. As indicated above, the ALJ's findings regarding A.O.'s medications are limited to when the medications are working. The ALJ's determination is also supported by A.O.'s IQ scores and the school's determination that A.O. did not require special education classes at this time, which Owens has not challenged. See, e.g., SSR 09-3p, 2009 WL 396025 (discussing school records as a significant source of information about

limitations in this domain, including grades or academic performance, special education services and related services, and other accommodations).

Moreover, even if the court were to determine that the ALJ failed to adequately explain his finding that A.O. had no limitations in this domain even though the state agency reviewers found that A.O. had less than marked limitations in this domain, the court finds any error harmless. As stated above, for a child's impairments to functionally equal the listings, they must result in either "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

### 2.    Interacting and Relating with Others

The ALJ explained that "[t]his domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." (Tr. 14.) The ALJ also observed that "[i]nteracting and relating with others relates to all aspects of social interaction at home, at school, and in the community. Because communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community." (Id.)

The ALJ found that A.O. had less than marked limitation in this domain. In support of this finding, the ALJ observed that Owens reported in a January 2010 function report that A.O. "enjoyed children his age and was affectionate to his parents." (Id.) The ALJ also found that in February 2010, A.O. interacted positively with his teacher in class, that a March 2010 report of contact noted that A.O. played well with other children at day care, and that treatment notes from the Beaufort



Jasper Clinic also document that A.O. was well-behaved during examinations. Finally, the ALJ found that "[w]hile the treatment notes document complaints of aggressive behavior toward other children, his stepmother reported that he had friends." (Id.)

Owens primarily appears to argue that the ALJ erred in crediting the above-discussed records over records documenting complaints of aggressive behavior toward other children and that the ALJ failed to properly explain how he weighed the evidence and resolved the conflicts. The court disagrees. In weighing the evidence, the ALJ explicitly acknowledged that the record contained treatment notes documenting complaints of aggressive behavior. In fact, earlier in the ALJ's decision, he mentioned some of these complaints, including that A.O. chewed a battery on one occasion and opened the emergency exit on a moving school bus. Although Owens may be able to point to selective evidence in support of a finding of greater limitations in this domain, he has failed to demonstrate that the ALJ's decision is unsupported by substantial evidence. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); see also Jackson v. Astrue, C/A/ No. 8:08-2855-JFA-BHH, 2010 WL 500449, at *10 (D.S.C. Feb. 5, 2010) ("[A]n ALJ is not required to provide a written evaluation of every piece of evidence, but need only 'minimally articulate' his reasoning so as to 'make a bridge' between the evidence and his conclusions.") (citations omitted).

### 3.    Caring for Yourself

The ALJ explained that the "caring for yourself" domain "considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical



and emotional wants and needs in appropriate ways." (Tr. 14.)  The domain "includes how the child

copes with stress and changes in the environment and how well the child takes care of his own

health, possessions, and living area." (Id.)  The ALJ found that A.O. had less than marked limitation

in this domain.  Specifically, the ALJ stated that while A.O.'s February 2010 Psycho-Educational

Evaluation noted that A.O. "had a significant delay in daily living skills, it was determined that he

did not require special placement for developmental delay" and that a November 2010 treatment note

documents that the claimant is able to dress himself.

Owens argues that the ALJ's finding in this domain is unsupported by substantial evidence,

pointing out that the state agency examiners found that A.O. had marked limitations in this domain.

Owens also points to records documenting (1) at age four, an inability of A.O. to dress himself, wash

or bathe himself, or brush his teeth without help; (2) reports in July 2010 that A.O. wanted to hurt

things and had a fascination with fire; and (3) reports of destructive behavior including A.O. biting

his clothes, tearing up paper, chewing up a battery, tearing up the classroom, on one occasion

flooding a bathroom at night, on another occasion possessing matches, and a report that he had bite

marks from biting himself and had pulled out patches of his hair causing his father to shave A.O.'s

head.

As an initial matter, it appears that the November 2010 evidence was not available at the time

the state agency examiners issued their opinions.  However, even if the court found that the ALJ's

decision on this domain was unsupported, as pointed out by the Commissioner, any alleged error is

harmless.  Even if the ALJ erred in failing to find, as the state agency examiners did, a marked

limitation in this domain, Owens has failed to demonstrate a marked limitation in any other domain

which is required for a child's impairments to functionally equal the listings.  See 20 C.F.R.



§ 416.926a(a).  Moreover, the Commissioner argues, and the court agrees, that other than possibly the subjective reports by A.O.'s parents which the ALJ found were not fully credible, Owens has pointed to no evidence supporting a finding of an extreme limitation in this domain.  See 20 C.F.R. § 416.926a(e)(3)(i) (explaining that a child has an "extreme" limitation in a domain when the claimant's impairment or combination of impairments interferes very seriously with his ability to independently initiate, sustain, or complete activities).

### RECOMMENDATION

For the foregoing reasons, the court finds that Owens has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 22, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).